No. 19,777.

JOHN BIZUP, JR., *v.* PEOPLE OF THE STATE OF COLORADO
(371 P. [2d] 786)

Decided May 28, 1962.

Mr. CHARLES D. PIERCE, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. ROBERT G. PIERCE, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

JOHN Bizup, Jr., the plaintiff in error here, was charged with the murder of one Roy Don Bussey on or about the 25th day of March, 1960, in Pueblo County, Colorado. Bizup entered pleas of not guilty, and not guilty by reason of insanity at the time of the alleged

offense charged. He was committed to the Colorado State Hospital for observation on two separate occasions and was further examined by a psychiatrist of his own choosing. At the termination of the trial on the issues the jury returned verdicts finding Bizup sane at the time of the alleged commission of the offense and guilty of murder in the first degree, and assessing his penalty at death. Bizup's motion for a new trial having been denied, he now seeks reversal by writ of error.

Bizup testified at the trial that while in the city of Pueblo on March 25, 1960, he hailed a taxi, told the driver, Roy Don Bussey, he wanted to go to the airport and then got into the back seat of the cab driven by Bussey. Bussey picked up and deposited another fare, after which, while out on the highway, Bizup fired a shot from his pistol through the floor of the cab in the back seat. He then ordered Bussey to stop the cab beside the road and asked for his money. Bussey handed over a plastic pouch containing money and a driver's license. Bizup then ordered Bussey to drive on until they came to a dirt road where Bizup ordered him to turn off, drive to the end of the road, turn around, drive half way back, stop and turn off the lights and ignition. Bizup and the cab driver conversed a few minutes, during which time Bizup advised the cab driver, in response to a question, that he would not be shot.

Bizup then handed the cab driver's license back to him and started to get out of the cab. As he did so he turned, pointed the pistol at the back of the victim's head and killed him with one shot fired at point blank range. Bizup then pulled the body from the cab and left it lying beside the road. He then drove the cab back to Pueblo where he abandoned it. Bizup was later apprehended as he was attempting to hitch-hike out of town, and, after first denying his guilt, admitted the robbery and the killing and signed the statement which was substantially the same as his recital of the occurrences as given at the trial.

The issue of the sanity of the defendant Bizup and the issue of his guilt on the substantive charge were tried at the same trial before the same jury. The defense presented a psychiatrist who testified that Bizup was suffering from a form of schizophrenia and at the time of the alleged killing was subject to irresistible impulses in that he could not choose the right and refrain from doing the wrong. In rebuttal, three psychiatrists from the Colorado State Hospital testified that in their opinion defendant was sane.

Defendant contends that the judgment should be reversed by reason of (1) refusal of the trial court to instruct the jury on second degree murder; (2) admission of irrelevant testimony and exhibits in evidence; (3) misconduct by the district attorney in final argument; and (4) permitting the district attorney to question psychiatrists with respect to the so-called "policeman at the elbow test."

We direct our attention first to Bizup's claim that the trial court should have submitted an instruction on second degree murder to the jury.

C.R.S. '53, 40-2-3 (Cum. Supp.) provides that "All murder . . . which is committed in the perpetration . . . [of] robbery . . . shall be deemed murder of the first degree . . . "

■ We have repeatedly pointed out that where the uncontradicted evidence was that the murder was perpetrated in the commission of one of the felonies specified in C.R.S. '53, 40-2-3 (Cum. Supp.) there is only one degree of murder, namely, murder in the first degree, and the question of second degree murder is not in the case. *Jones v. People,* 146 Colo. 40, 360 P. (2d) 686; *Early v. People,* 142 Colo. 462, 352 P. (2d) 112; *Jones v. People,* 93 Colo. 282, 26 P. (2d) 103.

Bizup contends, however, that under the facts presented here the robbery was completed when he took the deceased's money as they parked by the side of the

highway and that the killing, which occurred after they had driven down the highway to a side road, was a transaction completely disassociated from the robbery. We cannot agree.

The robbery and the killing which followed were all part of the same transaction. They were so closely connected in point of time, place and continuity of action as to be one continuous transaction. All of the defendant's acts from the time he took the money until he cold bloodedly shot his victim were one continuous integrated attempt to successfully complete his crime and escape detection. His escape with his ill-gotten gains was as important to the execution of the robbery as gaining possession of the property. When the homicide is within the res gestae of the initial crime and is an emanation thereof, it is committed in the perpetration of that crime within the meaning of the statute. *State v. Turco,* 99 N.J.L. 96, 122 Atl. 844; *People v. Nixon,* 33 C. (2d) 688, 203 P. (2d) 748; *State v. Fouquette,* 67 Nev. 505, 221 P. (2d) 404; *Jefferson v. State,* 128 S. (2d) 132 (Fla. 1961); *Early v. People,* supra.

During the course of the trial the court permitted evidence that Bizup's victim had on the day of his death cashed his pay check, paid a grocery bill and given his wife some money from the change he received. This evidence was offered and received for the purpose of showing that the deceased had money on his person shortly before he was robbed and killed by the defendant. Bizup contends that this evidence should have been excluded since he had already confessed that he had robbed and killed Bussey and that the only purpose such evidence served was to picture his victim as a sincere, hard-working family man and therefore make the killing the more heinous, leading the jury to inflict the death penalty.

In our opinion, the evidence was relevant and proper. It was incumbent on the state under its theory

of the case to prove that a robbery occurred. Robbery is the felonious and violent taking of money, goods or other valuable thing from the person of another by force or intimidation. C.R.S. '53, 40-5-1. Where the testimony admitted tends to establish any ultimate fact it is relevant. 1 Wharton, *Criminal Evidence,* Sec. 151, p. 294. The evidence in question which went to prove that the deceased did have money on his person and that he carried the same in a pouch, when connected with the testimony that when deceased was found the pouch was gone and so was any money he had on his person, all tended to cast light on the question of whether a robbery had been committed.

Nor was it improper for the state to offer this evidence because the defendant had already confessed to the robbery. An admission by a defendant does not prevent the state from presenting separate and independent proof of the fact admitted. *People v. Parisi,* 190 Cal. 542, 213 Pac. 968.

Bizup complains that the district attorney in his closing argument misstated testimony and misstated opinions given by the expert witnesses, and that such constituted prejudicial error. Only one of the statements was objected to, and under *Webb v. People,* 97 Colo. 262, 49 P. (2d) 381 and *Gilstrap v. People,* 30 Colo. 265, 70 Pac. 325, we would be justified in dealing only with that statement, but since the case involves the death penalty we have examined all the statements of the district attorney in his closing argument to which Bizup now takes exception.

In *Leick v. People,* 136 Colo. 535, 558, 322 P. (2d) 674, we stated the rule to be:

"It is within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and if he does not make any statement of fact not fairly deducible from the evidence his argument is not improper, although the inferences dis-

cussed are illogical and erroneous. Counsel may draw and state to the jury his own conclusions from the law and the testimony, provided he does not misstate the testimony, nor state facts as to which there is no testimony."

A study of the statements now objected to leads us to the conclusion that those statements were inferences drawn by the district attorney from the testimony given by witnesses. Any misstatements made as to the evidence itself were so inconsequential as not to render them reversible error.

We would point out again, as we did in *Jordan v. People,* 19 Colo. 417, 36 Pac. 218:

" * * * In view of the frequency with which assignments of error in criminal cases are based upon arguments of the district attorney, we deem it advisable to call attention to the fact, which often seems to be overlooked, that counsel for the state and for the defense stand before the jury on an absolute equality. Each has an equal right to comment upon the facts in the case and the inferences deducible therefrom, and apply thereto the law as given by the court. The nature and scope of argument that will be permitted in a cause is largely within the discretion of the presiding judge. It is the duty of the court to see that the bounds of propriety are not transgressed, but an appellate court will only interfere when a gross abuse of discretion is made to appear."

The final assignment of error is the contention that the trial court erred in allowing the district attorney to propound questions upon cross examination to the defense psychiatrist and upon direct examination to his own expert witnesses concerning the so-called "policeman at the elbow test." Specifically the district attorney inquired from the experts whether they believed the defendant would have shot his victim if there had been a policeman at his elbow at the time of the shooting. The purpose of the question, apparently, was to determine

whether Bizup was reacting to an irresistible impulse at the time of the shooting, as the defense psychiatrist had testified he was. No objection was made to this line of questioning and both sides indulged in numerous questions concerning this "test."

The answer given by the psychiatrist for the defense was that they were dealing with a person with an insane mind who "could have" or "might have" shot the victim even if there were policemen at both elbows. As a result of the answers given, no prejudice resulted to Bizup from these questions asked of the psychiatrist for the defense.

Questions in the same vein propounded on both direct and cross examination of the psychiatrists who testified for the prosecution resulted in answers that an insane person might or might not kill if a policeman were at his elbow. Such answers were not prejudicial to the defendant and in effect they tend to demolish the state's theory that there could be no "irresistible impulse" if the person alleged to be acting under the same would not have so acted if others were present.

Perceiving no prejudicial error, we must affirm the judgment and it is ordered that the same be executed during the week commencing on midnight Saturday, September 15, 1962.

MR. CHIEF JUSTICE DAY not participating.