No. 12213

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

FRED LEE PERRY,

Defendant and Appellant.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Truman G. Bradford, Judge presiding.

Counsel of Record:

For Appellant:

Ralph Randono argued, Great Falls, Montana.

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana.
J. C. Weingartner, Deputy Attorney General, argued,
Helena, Montana.
J. Fred Bourdeau, County Attorney, argued, Great Falls,
Montana.
Arthur G. Matteucci, Deputy County Attorney, Great
Falls, Montana.

---

Submitted: November 28, 1972

Decided: JAN 10 1973

Filed: JAN 10 1973

_Thomas J. Kearney_
                                        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Fred Lee Perry appeals from a judgment of conviction of second degree murder and life sentence in the state prison. He was tried by a jury in the eighth judicial district, county of Cascade, the Hon. Truman Bradford, judge presiding.

The body of Vicki Renville, a teenager, was discovered by a motorcyclist on a county road near Great Falls, Montana on February 24, 1971. Immediate investigation instituted by the sheriff's office of Cascade County lead to the arrest and conviction in separate proceedings of two men, defendant and Michael Stillings.

After making an on-the-spot investigation of the murder site, the sheriff had the body examined by Dr. Jack Henneford, a resident pathologist. As a result of his examination Dr. Henneford testified that she died from multiple blows to the left side of her head, fractures of the skull, and from extensive bleeding within the cranial cavity. He also testified the body showed two small recent tears of the hymen; that in his opinion the girl had been dead at least eight hours; and, that she had lived an hour or more after the blows had been inflicted.

During the investigation a deputy sheriff interviewed defendant the day after the body was found, as to his whereabouts on the night of the murder. Defendant informed the deputy he was at his trailer all evening, watched TV and went to bed. This statement was given in the presence of two other deputies. On March 6, 1971, some two weeks after the murder, the sheriff received word from defendant, then confined in the Missoula County jail on an unrelated charge, that he wanted to talk to the sheriff and give him information concerning the death of Vicki Renville. He told the investigating officers he wanted to help them and they obtained his release from the Missoula County jail in the custody of the Cascade County sheriff. Although it is not clear

in the record, it appears defendant implicated Michael Stillings. Stillings was arrested in Seattle, Washington, where he gave three deputy sheriffs a statement that he had killed Vicki Renville. Arrangements were made to return him to Great Falls, where he made another statement. Stillings told the officers that defendant had killed the girl. He told them the story of what happened the night of the killing, where he and defendant were, who they were with both before and after the killing. Accompanied by his attorney, the county attorney and three deputy sheriffs, he took them to the scene of the killing.

The story relating to the killing, as told to the jury by Stillings, was that he and defendant picked Vicki up late in the evening of February 23, 1971, and after riding around town they took Vicki to an area known as the Wadsworth Park. There Stillings suggested that Vicki have intercourse with him and when she refused he put a knife to her throat and forced her to have intercourse with him in the back seat of the car. Then, according to Stillings, defendant had intercourse with her. After these two acts Vicki got out of the car and his story of what happened then is:

"Q. What happened then? A. Vicki said she was going to rat.

"Q. Vicki said she was going to rat? A. Yes.

"Q. And do you know what she meant by that? A. Yes.

"Q. What did she mean? A. She was going to squeal.

"Q. And what happened then, if anything? A. Fred ducked back into the car and he grabbed the tire iron, and he started hitting her.

"Q. What kind of tire iron was it? A. It was a --just a single tire iron. It was a bar tire iron.

"Q. Did it have a lug wrench end on it? A. Yes.

"Q. Did it have a pointed end on it? A. Yes.

"Q. And could you see him striking her? A. Not at first.

"Q. Did you ever see him striking her? A. Yes.

"Q. When did you see him striking her? A. When she was laying on the ground.

"Q. And in what position was she in when she was lying on the ground? A. She was lying on her back.

"Q. And in what position was Mr. Perry? A. He was standing over her.

"Q. How many times did you see him strike her, do you recall? A. Maybe half a dozen times.

"Q. And what did you do then, if anything? A. I jumped out of the car and grabbed his arm.

"Q. What happened after you grabbed his arm? A. He dropped the tire iron and backed off."

Stillings testified that he picked Vicki up and thought she was dead. Then the two fled from the area returning to town where they picked up friends, so that they could establish an alibi. The next day Stillings changed the rear tires on his car, cleaned off the bloody tire iron, and soon thereafter left for Seattle. Stillings told the deputies where he threw the tire iron in the state of Washington, but after a thorough search no tire iron was found.

At the time he testified Stillings had entered a plea to second degree murder, but sentence had not been imposed. The defense attorney thoroughly cross-examined him about making a deal with the state, but he said he "expected no leniency".

Dr. Henneford in his expert testimony described the kind of weapon that could have inflicted the blows on Vicki, and when shown a tire iron like that described by Stillings, he testified that such a weapon could have inflicted the injuries described by him which resulted in her death.

Defendant was defended by two able counsel of the Bar of Cascade County. John F. Lynch, Esq. before entering private practice served as a clerk to this Court and worked for over a year on the revision of Montana's criminal code. John D. Stephenson, Jr. has been in active practice for over ten years and is a skilled, competent, qualified trial lawyer. On appeal, due to allegations made about his trial counsel, the trial court appointed Ralph T. Randono, a former deputy county attorney, to

handle the appeal. He was assisted in his preparation of the appellate brief by the trial counsel.

Defendant sets forth seven issues on appeal for this Court's consideration:

1. Defendant was not provided counsel as required.

2. Defendant was questioned and harassed by sheriff's deputies after his counsel was appointed.

3. Defendant when provided counsel, was given counsel without experience in criminal law.

4. Both defendant and counsel asked for new counsel.

5. There was a failure of corroboration.

6. The court erred in accepting a verdict of second degree murder.

7. The court erred in not granting defendant's post trial motion to modify the verdict in accordance with section 95-2101(c), R.C.M. 1947.

Issues 1, 3 and 4, concern trial counsel and as such the issue of competency of counsel will be discussed covering the three issues.

First, defendant alleges that between the time of his arrest and the appointment of counsel, he was subjected to examination by members of the sheriff's and county attorney's offices without counsel. The facts as set forth in our statement of facts fail to substantiate this charge. To the contrary, defendant volunteered to assist the Cascade County officials in clearing up the killing of Vicki Renville. He obtained release from the Missoula County jail and was allowed to return to Great Falls to assist in the investigation. It was not until after he implicated Stillings and Stillings had made the accusation involving defendant, that any focus was directed to defendant. The record reveals that after returning to Great Falls he again got into trouble and was put into the Cascade jail to serve out the Missoula County sentence. He was released, left the state, and it was not until August 17,

1972, that a warrant for his arrest was issued. The record and transcript fail to show any statements made by defendant during the investigative period, and defendant did not take the stand to explain anything that happened during that period. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L ed 2d 694, has no application to this fact situation.

Defendant was served by not one, but two, court appointed attorneys who were faithful to their professional obligations in his defense. Their thanks is now to be charged with being "ineffective counsel". These days this is not an unusual charge by convicted defendants and as this Court said in State v. Forsness, ____Mont._____, 495 P.2d 176, 179, 29 St.Rep. 232, 236:

> "Success is not the test of efficient counsel, frequently neither vigor, zeal, nor skill can overcome truth." See also: Petition of Heiser, 148 Mont. 149, 418 P.2d 202.

Here, the two trial counsel adequately represented defendant. We have scrutinized the record with care and find defendant was adequately, effectively, fairly, and competently represented.

We next consider issue 5 directed to an alleged failure of corroboration. The record supplies corroborative evidence, over and above the testimony of accomplice Stillings, as is required by section 94-7220, R.C.M. 1947.

There was medical evidence given by Dr. Henneford that Vicki had been raped. Two young girls, Chris Shatto and Joan Kimbell, testified that they were at defendant's trailer with defendant and Stillings from about 9 p.m. until after 11:30 p.m., when defendant and Stillings took them to the home of Don Shingledecker. Both girls identified the coat defendant wore that night. The coat in question was introduced in evidence and an FBI agent testified that it had human blood spots. Mike Baldwin testified that defendant and Stillings had picked him up about 12:30 a.m. and took him to a Mona Brown's residence where they stayed until after 1:30 a.m. Baldwin also identified the coat defendant wore that night. Joan Wittke, a friend of defendant, testified that defendant told her in the presence of one Randy Braden that a big guy and a small guy had killed Vicki, and "that they threw the tires in the river." In addition, all witnesses who testified

corroborated the Stillings' testimony concerning the events of the night of February 23-24, 1971.

It is well established in Montana that the sufficiency of the corroboration necessary to sustain a conviction based on the testimony of an accomplice is a matter of law. State v. Dess, 154 Mont. 231, 462 P.2d 186; State v. Barick, 143 Mont. 273, 389 P.2d 170; State v. Moran, 142 Mont. 423, 384 P.2d 777. When the trial judge is satisfied that the evidence is corroborative, he must submit the case to the jury to determine what effect the corroboration has and whether it is sufficient to warrant a conviction. The weight given an accomplice's testimony is for the jury to decide. Here, the jury was properly instructed as to the weight to be given an accomplice's testimony. We find no merit to issue 5.

Defendant next argues the court erred in accepting a second degree murder verdict. He contends in an instruction offered but refused, that it was either first degree or acquittal and cites in support of the refused instruction State v. Miller, 91 Mont. 596, 598, 9 P.2d 474, as establishing the law on the felony-murder rule. There, the murder was committed during a robbery and this Court said:

> "The trial court is required to instruct the jury on lesser degrees of a crime charged, or included crimes, only when the evidence would warrant a conviction of such other crimes * * * consequently where, as here, a defendant is either shown to have participated in a robbery, or attempted robbery, during which a homicide is committed, or the evidence fails to show that fact beyond a reasonable doubt, the only permissible verdict is either murder of the first degree or acquittal, and the trial court is not required to instruct on murder in the second degree."

In Miller the court held that the trial court did not err in failing to instruct the jury it could find the defendant guilty of murder in the second degree, because the evidence could not support that verdict.

Here, the trial court correctly found, in giving the instruction on second degree, that the Miller fact situation was not

- 7 -

comparable to the instant case. The homicide occurred after the alleged rape had been committed, it was not done during the perpetration of the rape. According to Stillings' testimony, Vicki was killed after she had been raped because she said she was going to rat (squeal).

The trial court properly instructed on second degree, and the jury so found. The court also carefully instructed on all the elements of murder. It would appear from its verdict that the jury did not find all the elements of first degree murder, but did find second degree and there were sufficient facts to warrant its verdict.

Defendant's final issue is directed to the court's denial of defendant's motion for a new trial and modification of the judgment, and again cites <u>Miller.</u> Having heretofore ruled on Miller, we find no merit to this issue. As previously noted, there was substantial evidence to support the verdict and we find the trial court properly denied the motion for a new trial. Where there is substantial evidence in the record to support the verdict, the action of the trial court will not be disturbed on appeal. State v. Walker, 148 Mont. 216, 419 P.2d 300.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 8 -