# STATE v. ALLEN BERRY.

214 N. W. 2d 232.

January 4, 1974—No. 44346.

*Warren Spannaus,* Attorney General, *John O. Sonsteng,* County Attorney, and *George L. May,* Assistant County Attorney, for appellant.

*Robins, Meshbesher, Singer & Spence, Ronald I. Meshbesher, Thuet, Collins & Mitchell* and *Paul A. Thuet, Jr.,* for respondent.

Heard before Knutson, C. J., and Otis, Peterson, and Mulally, JJ.

EDWARD D. MULALLY, JUSTICE.*

This is an appeal by the State of Minnesota from an order of the trial court dismissing an indictment returned by the grand jury of Dakota County against Allen Berry.[1]

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

[1] Minn. St. 632.11, subd. 1, provides in part: "In criminal cases the state may appeal in the following instances:

(1)   From an order, the substantive effect of which is to dismiss an indictment, information or complaint."

Most of the factual material is supplied by affidavits and many of the facts are in dispute. There is no dispute that in December 1972 and January 1973 the grand jury, with the aid of the county attorney's office, was investigating a bingo game conducted by a South St. Paul youth club of which Berry had been an officer. Berry contends that he was informed that he was the prime object of the investigation. Berry was served with a subpoena to testify before the grand jury on December 28, 1972. This appearance was postponed until January 8, 1973.

On January 8, 1973, Berry and an Internal Revenue Service agent, who had also been subpoenaed, appeared at the office of George May, assistant county attorney for Dakota County. The agent had in his custody the books and records of one of the corporations being investigated by the grand jury and May sought to obtain them through Berry. Berry said he was willing to testify before the grand jury but would not sign a written waiver of immunity. He contends that May told him that if he did not sign the waiver, the grand jury could not indict him through the use of any testimony he might give. Berry refused to give the Internal Revenue Service permission to release the corporate books and records to May voluntarily and was told that he could go.

That evening, another subpoena was served on Berry directing him to appear the next day. He claims he attempted unsuccessfully to telephone his lawyer, but again responded to the subpoena. At a special hearing on January 9, 1973, the court granted May's motion to transfer custody of the corporate books and records from the Internal Revenue Service to the court for possible use in the grand jury's investigation. After the hearing, Berry again refused to execute the written waiver of immunity but, in fact, appeared as a witness before the grand jury and was questioned for 3 hours.

May contends that on two occasions prior to Berry's appearance before the grand jury, Berry was told that he had a right not to testify; that if he did testify, he could terminate his testimony at any time; that he could refuse to answer any questions;

and that his testimony could be used against him if he did testify. James Vassar, an accountant scheduled to testify before the grand jury, also states by way of affidavit that Berry was, in Vassar's presence, informed of his rights before he testified.

On January 11, 1973, the grand jury returned an indictment against Berry, charging him with theft and violations of the state gambling law. Berry's name appeared as a witness on the indictment. Arraignment was to be held on January 12, 1973, but Berry moved to quash the indictment. The motion was heard on March 14, 1973, and on April 17, 1973, an order was entered dismissing the indictment. In granting the motion, the trial court found, "Under the circumstances it is impossible for the Court to determine whether or not the Defendant understood or misunderstood the possible consequences of testifying before the Grand Jury."

The state argues that the facts of this case show that Berry knowingly and voluntarily waived his immunity from self-incrimination when he testified before the grand jury. Berry asserts that Minnesota law is clear that absent a voluntarily executed, signed, written waiver of immunity, an indictment must be dismissed against a defendant who testified under subpoena before the grand jury which returned it.

The Fifth Amendment of the United States Constitution and Article 1, § 7, of the Minnesota Constitution, as they relate to self-incrimination, are identically worded and provide:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

At an early date, this provision was interpreted by this court as applying to a witness appearing before a grand jury. State v. Froiseth, 16 Minn. 260 (296) (1871). The United States Supreme Court also applied the privilege against self-incrimination to a witness appearing before a grand jury. Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. ed. 1110 (1892). The Fifth Amendment through the Fourteenth Amendment has

been applied to the states. Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489, 12 L. ed. 2d 653 (1964).

The law on privilege against self-incrimination was restated in State v. Falcone, 292 Minn. 365, 371, note 10, 195 N. W. 2d 572, 576 (1972), when this court said:

"* * * A defendant who is called as a witness before the grand jury and whose testimony sustains an indictment against him is protected by his constitutional right against self-incrimination and is immune from prosecution based on his testimony. This immunity can be asserted to quash an indictment against the defendant."

This court in that quotation made no reference to waiver of the self-incrimination privilege; but it is obvious, since the Falcone case concerned a written waiver, that such a waiver is possible in Minnesota. See, also, State v. Iosue, 220 Minn. 283, 19 N. W. 2d 735 (1945). "It is a uniformly accepted rule that the privilege not to give self-incriminating evidence, although absolute when claimed under the proper circumstances, may be waived by anyone entitled to invoke it." Annotation, 38 A. L. R. 2d 225, 255. See, also, 58 Am. Jur., Witnesses, § 94.

Minnesota law apparently has not required that a waiver of the right against self-incrimination be in writing. State v. Mason, 152 Minn. 306, 189 N. W. 452 (1922). We now hold that a waiver of this right may be given orally, in writing, or by conduct. United States v. Steffen, 103 F. Supp. 415 (N. D. Cal. 1951). State v. Falcone, *supra,* does not, as Berry contends, hold that an indictment returned against a defendant who testified before a grand jury under subpoena must be dismissed unless the waiver was in writing and executed in writing by the defendant.

The determination of whether a waiver has been made is a factual one. State v. Iosue, *supra;* State v. Mason, *supra;* State v. Gardner, 88 Minn. 130, 92 N. W. 529 (1902). However, in any case, in order that it be an effective waiver, it must be found that it was made voluntarily and with a clear understanding of the

possible consequences; or, as stated in State v. Iosue, 220 Minn. 283, 296, 19 N. W. 2d 735, 741, "in a frame of mind wholly 'free from any sense of compulsion.'"

From the beginning, Berry has contended that he was told by May that if he testified without signing a written waiver, he could not be indicted on his testimony. That Berry believed such to be the case receives support from the fact that even though he testified, it is apparent that throughout the entire series of events he carefully avoided signing the written waiver.

As noted before, the trial court concluded that it was impossible to determine the nature and extent of defendant's understanding of the possible consequences of testifying before the grand jury. In light of that conclusion, nothing would be gained by remanding, since the trial court would be unable to make a more definitive finding.

The indictment of a "prime object" of an investigation should not be allowed to stand when the issue of voluntary waiver is so clouded with uncertainty. The trial court's finding on the issue of voluntary waiver can only be construed as a finding that Berry did not understand his rights and testified before the grand jury in the mistaken belief that he would not be indicted without having signed a written waiver.

In criminal matters, the legislature has seen fit to require a written waiver signed by the defendant if he is to waive his right to a jury trial, Minn. St. 631.01, and in the case of waiver of counsel, a written waiver signed by the defendant, or on the record if he refuses to sign, Minn. St. 611.19. When a potential defendant is to testify voluntarily before a grand jury, we suggest that the better practice would be for the prosecution to have the witness execute a written waiver, or make a record of the entire proceeding as it relates to any oral waiver.[2]

---

[2] This type of problem should become almost nonexistent in the event Rules 15.4 and 15.51 of Minnesota Proposed Rules of Criminal Procedure, recommended by Minnesota Supreme Court Advisory Committee on Rules of Criminal Procedure, are adopted. Rule 15.4 would allow a

186

Although Berry was not compelled to be a witness against himself in any physical sense, or by being placed in fear for his personal safety, compulsion may occur in other forms. State v. Gardner, 88 Minn. 130, 92 N. W. 529 (1902), involved a police officer who allegedly accepted a bribe. He was subpoenaed to appear before the grand jury. Defendant contended that the foreman of the grand jury told him that the only way to save himself from severe punishment was to tell all he knew. The defendant also contended that during the examination the assistant county attorney brought in a law book and offered to show defendant a portion which said if defendant would testify before the grand jury he would be protected. This court indicated that if the contentions of the defendant were true, then he had been compelled by a promise of immunity to be a witness against himself as to the charge upon which he was subsequently indicted by the same grand jury and the indictment should be quashed.

While it does not appear here that the prosecuting attorney intentionally misled the defendant, as may have been done in State v. Gardner, *supra*, it does appear that it is probable that Berry testified in the mistaken belief that he had assurances that he could not be indicted. We conclude that the trial court was correct in dismissing the indictment.

In view of our affirmance of the trial court on this issue, there is no need to consider other contentions.

Affirmed.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

MR. JUSTICE TODD took no part in the consideration or decision of this case.

---

witness to have his own counsel with him in the grand jury room, and Rule 15.51 would provide for a verbatim record of all statements made and events occurring while a witness is before the grand jury.