## STATE v. PATRICK IOSUE.[1]

June 29, 1945.

No. 34,039.

[1]Reported in 19 N. W. (2d) 735.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *James F. Lynch,* County Attorney, and *William Desmond,* Assistant County Attorney, for the State.

*Stacker & Stacker* and *George G. Chapin,* for defendant.

JULIUS J. OLSON, JUSTICE.

By indictment, defendant was charged with the crime of assault in the second degree, in that he did on a specified date wilfully and feloniously attempt forcibly to ravish and have sexual intercourse with the prosecuting witness. He moved to quash the indictment for reasons which we shall later relate. The following factual background is deemed helpful to our consideration and determination of the problems presented:

On October 12, 1944, the grand jury was investigating a charge that defendant had committed the crime of rape on September 26, 1944. Having learned of this, defendant prepared, signed, and verified an instrument labeled: "In re: Investigation by the Grand Jury of Ramsey County of Rape Charge. WAIVER OF IMMUNITY." The instrument recites in substance that, since defendant had been informed that the grand jury was about to inquire into the charge mentioned, he expressed a "desire to voluntarily appear before the Grand Jury * * * for the purpose of testifying concerning the investigation of such charge." The instrument then recites:

"I have been informed that it is my privilege to refrain from testifying should I so desire; I have been informed that I cannot be compelled to give testimony in this matter; I have had the

advice of counsel and fully understand and appreciate my rights and privileges in this matter; I have also been informed that should I testify that any testimony I may give may be used against me in the event that I should be indicted on any criminal charge.

"I am informed that these rights are preserved to me by the Constitution of this state, nevertheless, I voluntarily and without coercion or compulsion on the part of anyone desire to waive these rights and I desire to appear before the Grand Jury and wish to answer any question that might be put to me concerning the said charge.

"And I hereby voluntarily sign this Waiver of Immunity on this 12th day of October, 1944, at the hour of 2:30 P. M. before entering the Grand Jury Room for the above purpose."

During the afternoon of that day the grand jury reported "no bill found against Patrick J. Iosue, accused of the crime of Rape." On November 14, the judge in charge of the grand jury ordered that the cause be resubmitted for further consideration. Defendant appeared at the later hearing pursuant to subpoena issued and served for that purpose. He made no objection to so appearing and so testifying. On November 16, the grand jury, "after investigation, reports no bill found against Patrick Iosue accused of the crime of Rape." At both of these hearings, numerous witnesses were heard. Their names were endorsed upon the indictment later found and returned. Then, on December 4, the same judge gave the grand jury a supplemental and additional charge defining therein the crime of rape, attempted rape, indecent assault, and assault in the second degree, and further instructed the grand jury as to its rights and duties. On December 8, the matter was resubmitted to the grand jury, which then heard two additional witnesses, but their testimony, later adduced before the trial judge, was not, standing alone, sufficient to warrant conviction. On December 11, the present indictment was returned. This, as we have seen, was the one charging defendant with the crime of assault in the second degree.

It is conceded that at the time of the December investigation none of the witnesses examined during the October and November investigations were reëxamined, but that the grand jury took the testimony of such witnesses into consideration in deciding to indict. We may well assume, in fact concede, that the testimony of the two witnesses examined in December, standing alone, would have been insufficient to warrant an indictment.

The motion to quash is based upon these grounds:

(1) That defendant was compelled, by reason of process (subpoena) issued at the instance of the grand jury, to appear before that body; that he was examined under oath touching the offense then being considered as a basis for the indictment; that such compulsion was in violation of his constitutional rights, particularly Minn. Const. art. 1, § 7, and U. S. Const. Amendments V and XIV.

(2) That the indictment found was voted by the grand jury after two no bills had been returned; that in substance and effect the prior investigations were for the same offense as is charged in the present indictment; that, with the exception of two, none of the witnesses appearing and testifying before the grand jury and whose names are endorsed on the indictment were reëxamined or appeared in the investigation resulting in the indictment returned; that their appearance and testimony related to the proceedings had in respect to which no bills had been voted.

(3) That the procedure by which the offense for which defendant now stands indicted prevented a free and impartial consideration of the charge now presented.

(4) Lastly, that the procedure had in this investigation did not afford defendant due process and was violative of his constitutional rights.

The motion to quash was denied. However, the court was of opinion that the issues presented "are so important or doubtful as to require the decision of the Supreme Court," and therefore, since both defendant and the county attorney "have requested that

the undersigned report this case so far as may be necessary to present the questions of law arising therein and that he certify the report to the Supreme Court," the court, "pursuant to said request," reported and certified "the following questions," pursuant to Minn. St. 1941, § 632.10 (Mason St. 1927, § 10756). We shall consider and determine these in the order certified.

■ (1) "After having returned the No Bills of October 12, 1944 and November 16, 1944 could the grand jury on the resubmission to it of the charge in December 1944 return an indictment without reëxamining witnesses competent to testify on the commission of the crime by defendant?"

Defendant's position is that a person concerning whom an investigation is under consideration by the grand jury need not claim any privilege in order that an indictment, which may be based in whole or in part on his testimony, should be quashed, especially where, as here, his testimony was required under the compulsion of a subpoena; in other words, that the subpoena in this case issued prior to the second (November) finding of a no bill was a compulsory requirement which destroyed the force and effect of his original waiver of immunity; and, furthermore, that the waiver itself in its nature and purpose was limited to the first investigation resulting in a no bill in October 1944.

The trial court, in its memorandum, lucidly and convincingly gives its reasons for reaching the opposite view. The court cited in support of its conclusion State v. Ginsberg, 167 Minn. 25, 208 N. W. 177; Whiting v. State, 48 Ohio St. 220, 27 N. E. 96; United States v. Thompson, 251 U. S. 407, 40 S. Ct. 289, 64 L. ed. 333; and other cases, including many of our own. It also cited and relied upon cases found in the annotations in 28 L.R.A.(N.S.) 327; Ann. Cas. 1916D, 276; and 59 A. L. R. 581. We have read the cases to which reference has been made and have no difficulty in reaching the same conclusion as did the trial court where it said:

"* * * On principle, if the grand jury is a continuous body with power to base an indictment on the testimony heard in a

previous or some other investigation, it would seem that it would be immaterial whether the previous or other investigation resulted in a no-bill or an indictment or whether the investigation resulting in the indictment under attack was begun by the grand jury on its own motion or resulted from a resubmission by the court because an indictment had been quashed or a demurrer to an indictment had been sustained or because the grand jury had returned a no-bill. In any event it is a 'reopening' of the investigation. A comparable situation arose in U. S. vs. Simmons, 46 Fed. 65. In this case it seems the grand jury had voted to return a no bill but before making a return to the court, without taking any additional evidence it voted an indictment. A motion to quash because no new evidence was taken after voting to return a no-bill as a basis for the indictment was denied."

Obviously, the Ginsberg case is authority for the conclusion reached by the trial court. Insofar as State v. Young, 113 Minn. 96, 129 N. W. 148, Ann. Cas. 1912A, 163, is concerned, upon which defendant heavily relies, we find that the Ginsberg case so limits its purpose and effect as to destroy its efficacy to sustain defendant's position. Defendant's reliance is based upon this statement in the Young case (113 Minn. 100, 129 N. W. 150, Ann. Cas. 1912A, 163):

"There can be no substantial distinction, so far as concerns a termination of the authority of the grand jury, between a case where an indictment is returned and one where the jury reports no indictment as the result of their consideration of the charge. In either case, *in the absence of express directions from the court, the authority of the jury ceases with the report.*" (Italics supplied.)

As this court pointed out in the Ginsberg case (167 Minn. 28, 208 N. W. 178):

"* * * That dictum can apply only to cases where an order of resubmission is required by statute. But we have no statute making formal resubmission generally prerequisite to reindictment."

In the instant case, we have a resubmission ordered by the court. And in so resubmitting the cause the court fully and carefully instructed the jury, as we have seen, on the several offenses of rape, attempted rape, indecent assault, and assault in the second degree. In neither the October nor the November proceeding was anything other than the rape charge considered. The present indictment is for assault with intent to commit rape—clearly a lesser offense than that of rape.

As pointed out in United States v. Thompson, 251 U. S. 414, 40 S. Ct. 292, 64 L. ed. 342:

"'* * * the power and duty of the grand jury to investigate is original and complete, susceptible of being exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper, and is not therefore dependent for its exertion upon the approval or disapproval of the court; that this power is continuous, and is therefore not exhausted or limited by adverse action taken by a grand jury or by its failure to act, and hence may thereafter be exerted as to the same instances by the same or a subsequent grand jury."

Numerous cases are cited by the court to sustain that view.

■ Furthermore, § 628.02 (§ 10621) provides that the grand jury shall inquire into all public offenses committed or triable in the county and shall report them to the court. If upon inquiry in a particular case the evidence is found adequate, the jury is charged with the duty of finding an indictment against the accused. If, on the other hand, it is of the view that he is probably guilty, its duty is to proceed by presentment. Under § 628.08 (§ 10637), it is provided:

"No indictment shall be found without the concurrence of at least 12 grand jurors. When so found, it shall be endorsed, 'A true bill,' and the endorsement signed by the foreman, whether he be one of the 12 concurring or not. If 12 grand jurors shall not concur in finding an indictment or presentment, the charge shall be dismissed, *but such dismissal shall not prevent its being*

*again submitted to a grand jury as often as the court shall direct."* (Italics supplied.)

Here, there is no claim that the requisite number of jurors failed to agree. There had been no formal dismissal of the original charge involving the crime of rape only, since the grand jury had found a no bill on each of the two occasions when that question was before it. The jury, however, did have knowledge, gained from an examination of witnesses appearing at those investigations, from which it concluded that there was evidence in the case sufficient to warrant an indictment for the offense charged in the indictment found.

■ As to defendant's assertion that the indictment here is invalid because it was returned by the grand jury without a reëxamination of the witnesses originally heard or the taking of additional evidence, that question was disposed of in the Ginsberg case (167 Minn. 30, 208 N. W. 179) in this language:

"* * * The very point was held not well taken [citing cases] on the proposition that 'repeated indictments may be found on the same evidence against the same persons.'" (Citing cases.)

The opinion then proceeds with a quotation from Whiting v. State, 48 Ohio St. 230, 27 N. E. 97, as follows:

"* * * The witnesses to the transaction having been once properly sworn and sent to the grand jury, there is nothing in the reason of things, why the evidence obtained upon their examination, could not be acted on at any time during the session of the grand jury, for a purpose within its jurisdiction. The finding of the first indictment, could not exhaust its powers concerning the matter inquired of. All the proceedings of a grand jury may be regarded as *in fieri* until its final adjournment. And, hence, the grand jury in this case, had the power upon the same evidence to find another indictment, with the same or different counts, if in its judgment, the administration of justice required it."

The opinion also cites and quotes from the case of Thompson v.

United States (9 Cir.) 202 F. 401, 404, 120 C. C. A. 575, 578, 47 L.R.A.(N.S.) 206, 213:

"* * * we may well wonder why it should ever have been held otherwise, as no substantial reason is apparent why a grand jury after having once found an indictment which is discovered to be defective in form may not, upon the information which it has acquired, and with the same conviction, based upon that information, that the defendant should be brought to trial, present a second indictment for the same offense."

■ A brief résumé of the history of the grand jury system may be helpful. We find that the grand jury in English law goes back many centuries. To begin with, it not only accused, but also tried, those who had offended the criminal law. As time went on, however, it became an accusing tribunal only. No one charged with a crime amounting to felony, except in certain special cases, could be put upon trial without prior action by that body. It frequently stood as a barrier against royal persecution. The King's subjects were made more secure thereby against prosecutions by the Crown. While that reason may not have been the motivating factor in this country, the fact remains that the grand jury system was adopted here and for considerations quite similar to those of the mother country. Our adoption of the system was founded upon the theory not only of bringing wrongdoers to justice, but also of providing to one accused protection against unfounded and unreal accusations, whether these had their origin in governmental sources or were founded upon private passion or enmity. 24 Am. Jur., Grand Jury, § 3. What has been said finds support also in Hale v. Henkel, 201 U. S. 43, 59, 26 S. Ct. 370, 373, 50 L. ed. 652, 659, where the court said:

"Under the ancient English system, criminal prosecutions were instituted at the suit of private prosecutors, to which the King lent his name in the interest of the public peace and good order of society. In such cases the usual practice was to prepare the proposed indictment and lay it before the grand jury for their con-

sideration. There was much propriety in this, as *the most valuable function of the grand jury was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will."* (Italics supplied.)

■ Our statute prescribes the form of oath to be administered to grand jurors (Minn. St. 1941, § 358.07 [Mason St. 1927, § 6965]), in this language:

"You each do swear that you will diligently inquire, and true presentment make, of all public offenses committed within this county of which you have legal proof; the counsel of the state and of yourself and fellows you will keep secret; you will present no person through malice or ill-will, nor leave any unpresented through fear or favor, or the receipt or hope of reward, but will present things truly to the best of your understanding and according to law. So help you God."

This in substance and effect is the form "commonly required" in this country and as it "has come down to us from the most ancient times." 24 Am. Jur., Grand Jury, § 23; Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. ed. 652, *supra;* Commonwealth v. Woodward, 157 Mass. 516, 32 N. E. 939, A. S. R. 302.

We conclude that the trial court was right in holding that the first question presented should receive an affirmative answer.

■ (2) "Did the waiver signed by the defendant extend to the reopening of the investigation of the charge against him on its resubmission by the Court in November 1944 after the October 1944 No Bill had been returned?"

That defendant, by his execution and use of the waiver of immunity, expected to and in fact did intend to testify in the matter is too clear for argument contra. He fully understood and appreciated his rights and privileges, and that, if he should testify, any testimony he might give "may be used against me in the event

that I should be indicted *on any criminal charge.*" (Italics supplied.) He had been informed of his constitutional rights by his own chosen counsel, but nevertheless "voluntarily and without coercion or compulsion on the part of anyone" desired "to waive these rights and I desire to appear before the Grand Jury and wish to answer any question that might be put to me concerning the said charge."

Here, there was a resubmission in November. If the grand jury had deemed further investigation necessary or desirable, it could have so proceeded at its October investigation. If such hearing had been adjourned, there is no doubt that defendant, having voluntarily submitted himself in the manner and for the purposes averred by himself, could not limit, at such adjourned hearing, the extent of the jury's examination or cross-examination. Clearly, he did not expect to give only favorable testimony for himself. Questions could well have been asked which might have incriminated him or impeached his testimony. His waiver stood unattacked. There was no withdrawal of the waiver. At the November examination, the grand jury had a right, of course, to use the evidence theretofore heard in October. If further elucidation was desired, it obviously had the power to recall any witness theretofore heard, as well as new witnesses. Since defendant had by his own specific request made himself a witness, he obviously concluded that the November examination was no other than a continuation or reopening of the former investigation. There is in its language no intimation or suggestion that it should be limited to a particular hour or day. We have no hesitancy in also answering this inquiry in the affirmative.

(3) "Is the defendant estopped from claiming immunity after signing the waiver prior to the October investigation at which he testified under oath, which waiver is not expressly limited as to time, and by his failure to inform the grand jury on the reopening of the investigation in November 1944 that he intended to claim immunity?"

We think our disposition of the second question disposes of this. There is here a total absence of any claim or showing that the waiver was intended to be limited as to time. If defendant had sought a withdrawal of his waiver, it would obviously have been his duty so to inform the grand jury. But no change of mind appears. He must have known that the subpoena was not intended to furnish him with a plea of immunity. He undoubtedly knew, having sought competent counsel, that the grand jury was not reinvestigating the charge out of mere curiosity. He must have known and fully realized that the grand jury was acting on the assumption that by subpoenaing him it was still proceeding in its investigation under the waiver. By his silence, then, when he should have spoken, he defeated his present claim of immunity. If a mere request for his appearance had been made and he had appeared without the formality of subpoena, no one could doubt that his original waiver was still operative. That question is also answered in the affirmative.

■ (4) "Under the facts here disclosed is there a question of fact to be determined by the trial court whether the defendant was compelled to give evidence against himself before the grand jury investigating the charge against him?"

In its memorandum, the court concluded that defendant's attitude at the November reopening of the investigation indicated "a frame of mind free from any sense of compulsion." The grand jury even then, in its investigation of the charge of rape, found a no bill, so it seems farfetched to claim now that anything approaching compulsion entered into the case. Defendant did not think so then, but evidently suffered a sudden change of heart when in December the indictment charging him with assault in the second degree was found and returned. The facts then, one may safely assume, were before the grand jury, and it had the right to consider all of them as theretofore adduced in its investigations. All of them, according to his own version, related to the "same offense." We think, as did the trial court, that defendant was not

compelled to give evidence against himself, but that he testified in a frame of mind wholly "free from any sense of compulsion." If there was a fact question, the trial court has already taken care of it. As the case stands, our answer to that inquiry is *No*.

The questions having been answered, the cause is remanded to the trial court for such further proceedings as are by law required.

So ordered.

[1]Reported in 19 N. W. (2d) 726.