**STATE of Minnesota, Appellant,**

v.

**Clinton GROSE, Respondent.**

**No. C7–85–2363.**

Court of Appeals of Minnesota.

May 13, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, R. Kathleen Morris,[1] Scott Co. Atty., Shakopee, for appellant.

Ronald I. Meshbesher, Jack S. Nordby, John P. Sheehy, Meshbesher, Singer & Spence, Ltd., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This is a pre-trial appeal by the State from a trial court order dismissing two grand jury indictments against respondent Clinton Grose for aiding and abetting perjury. Finding no error, we affirm.

## FACTS

In 1971 Michael Patrick broke his neck in a high school football game while tackling a runner, leaving him a quadriplegic. Several years later in 1976 he retained attorney Clinton Grose to pursue a products liability action arising out of his injuries. Suit was brought in Scott County District Court against the helmet and face mask manufacturers, among others. Michael Patrick's case went to trial in 1982 and the trial lasted ten weeks. The jury found Patrick suffered $2 million in damages but that the defendants were not liable.

The Patrick family sought an attorney to sue Grose for malpractice. In February 1985 they met with attorneys at the law firm of Moss & Barnett who discussed a possible malpractice claim based on the premise that Grose had suborned perjury at the 1982 trial by urging the Patricks to exaggerate the predicament of Michael Patrick and the amount of care he required. The lawyers at Moss & Barnett contacted the Scott County Attorney's office about obtaining immunity for the Patricks. The Patricks received a letter promising immunity from the Scott County Attorney's office and they went to the Shakopee Police Department where they were interviewed. An investigation was begun and on May 30, 1985 a Scott County District Judge gave Michael and Colleen Patrick (his mother) immunity.[2]

The same day a grand jury was convened in Scott County to investigate the matter. It is clear from the transcript that much of the proceedings were hurried because the three year statute of limitations was about to expire on some of the perjury allegations. *See* Minn.Stat. § 628.26(e) (1984). On June 3, 1985 the grand jury returned

---

1. The Scott County Attorney had been scheduled to present the oral argument on behalf of the State. At oral argument, a law clerk from the Scott County Attorney's office appeared in her place.

2. The immunity granted the Patricks may have mistakenly led them to believe they had full transactional immunity, not use immunity. The trial court's oral order at the immunity hearing indicates the Patricks could not be prosecuted

for anything they said before the grand jury. Under our use immunity statute, they could be prosecuted for any perjury they committed while testifying before the grand jury. Minn. Stat. § 609.09, subd. 1 (1984); *see United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). The later written order of the trial court granting immunity, prepared by the prosecutor, does indicate that only use immunity was granted.

with an indictment based on allegations that respondent aided and abetted Colleen Patrick in committing perjury; the next day an indictment that respondent aided and abetted Michael Patrick in committing perjury was returned. *See* Minn.Stat. § 609.48, subd. 1(1); 609.05 (1984).

Respondent moved to dismiss the indictments on September 12, 1985. After written briefs were submitted, on December 12, 1985, the trial court dismissed the indictments because of numerous violations, including: (1) the prosecutor's repeated improper comments about respondent's fifth amendment rights; (2) the prosecutor's repeated improper comments about respondent's right to waive the statute of limitations; (3) the prosecutor's improper comments on the possible punishment and the prosecutor's improper comment that other parties indicted by the same grand jury had pleaded guilty; (4) improper instructions that a perjury indictment could be based on actions "throughout the entire trial," which would include actions beyond the statute of limitations; (5) repeated failure to inform the grand jury that there must be evidence of knowing and intentional aiding and abetting of perjury; (6) an affirmative misstatement in response to a grand juror's question that respondent did not have to be shown to have believed the testimony was false; (7) failure to explain the essential elements of *scienter* and intent; (8) failure of the indictment to specify with particularity which statements of Michael Patrick were allegedly false; (9) a similar failure of particularized information in the Colleen Patrick indictment; (10) the failure to show that at least twelve grand jurors concurred in the indictment; (11) violation of the First Judicial District's rule that all grand jury proceedings must be recorded; (12) failure to disclose conflicting testimony and exculpatory evidence to the grand jury; (13) use by the grand jury of allegations other than those in the indictments upon which they based probable cause; (14) a "substantial" modification of crucial allegations of the indictments without consent, approval or vote of the grand jury; (15) the overpowering of the will of the grand jury by the prosecutor; (16) an improper testimonial communication by the prosecutor to the grand jury; (17) misstatement by the prosecutor of the evidence before the grand jury; (18) the prosecutor's improper presence in the grand jury room as an unauthorized person during deliberations and voting; and (19) that the errors individually and cumulatively were prejudicial.

The State appealed this order.

## ISSUES

1. Should the appeal be dismissed because the State's brief was untimely or for other procedural violations?

2. Did the trial court clearly err in dismissing the indictments?

## ANALYSIS

### I. MOTION TO DISMISS THE APPEAL

Respondent moved to dismiss the State's appeal on several grounds. We reserved a ruling on the motion and now address respondent's contentions.

■ 1. Respondent initially contends that the State's brief was untimely requiring dismissal of the appeal under *State v. Keith,* 325 N.W.2d 641 (Minn.1982). The State's brief was due within 15 days of delivery of the transcripts. Minn.R. Crim.P. 28.04, subd. 2(3). The brief was filed on January 24, 1986. The records show that the State had ordered a transcript of the September 12, 1985 hearing to dismiss the indictments and that it had received a transcript of this hearing around the end of September. If this were the only transcript, it would appear appellant's brief was indeed untimely. However, the State had ordered all transcripts the day it filed its notice of appeal, including a June 18, 1985 transcript which dealt with discovery matters. This transcript was completed and sent to the county attorney on January 9, 1986; hence appellant's brief was timely filed.

2. Respondent contends the transcript certificate was not filed within 10 days of when the transcripts were ordered. This is not a jurisdictional defect to the appeal. *Boom v. Boom*, 361 N.W.2d 34, 36 (Minn.1985), cited in *State v. Herem*, 365 N.W.2d 771 (Minn.1985).

3. Respondent raises several other rule violations, such as:

   a. Statement of the case was not filed with the notice of appeal.

   b. Appellant's brief lacks a statement of the facts.

   c. Appellant's brief lacks a summary of evidence supporting the court's order.

   d. Appellant's notice of appeal and brief is captioned "State of Minnesota vs. Clint Grose" rather than "State of Minnesota vs. Clinton Grose."

   e. Appellant's brief does not contain the appellate court case number one-half inch from the top center of the cover page.

   f. Appellant's index is not separately numbered.

   g. Appellant's index lacks a reference to the conclusion or the contents of the appendix.

   h. Appellant's brief does not contain the telephone numbers of the attorneys.

While we are especially troubled by the State's failure to include a statement of the facts in its brief, we are not persuaded that these procedural errors are grounds for dismissal of the appeal.

## II. DISCUSSION OF DISMISSAL OF INDICTMENTS

It is important that grand juries be unbiased because the grand jury serves as a protector of citizens against arbitrary and oppressive government acts and unfounded prosecutions. *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972); *State v. Iosue*, 220 Minn. 283, 292–93, 19 N.W.2d 735, 739–40 (1945). In *Iosue*, the supreme court quoted the following language from *Hale v. Henkel*, 201 U.S. 43, 59, 26 S.Ct. 370, 372, 50 L.Ed. 652 (1906):

> [T]he most valuable function of the grand jury was not only to examine into the commission of crimes, but to stand between the prosecutor and the accused, and to determine whether the charge was founded upon credible testimony or was dictated by malice or personal ill will.

*Id.* at 293, 19 N.W.2d at 740.

As an officer of the court, the prosecutor is sworn to ensure that justice is done. *United States v. Hogan*, 712 F.2d 757, 760 (2d Cir.1983). The prosecutor is the person who draws up the indictment, calls and examines the witnesses, advises the grand jury about the law, and is in constant attendance during its proceedings. In the grand jury system the prosecutor must act in good faith to see that justice is done.

The trial court made detailed and extensive findings which enumerated several violations of the Minnesota Rules of Criminal Procedure and defendant's constitutional rights. In a carefully prepared and well-reasoned memorandum, the court stated in part:

> The combination of repeated violations of defendant's constitutional rights during the course of the grand jury proceedings, together with the cumulative effect of a great number of procedural rule violations require dismissal under the rationale set forth in Rule 1.02 of the Minn. R.Crim.P. There, it is stated as follows:
>
> These rules are intended to provide for the just, speedy determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.

This Court is also mindful of the holding in *State v. Florence* [306 Minn. 442] 239 N.W.2d 892 (Minn.1972). To allow these indictments to stand when the allegations may not be supported by probable cause due to the errors and irregularities

of the proceedings would result in requiring a defendant to stand trial, and to bear the expense and ignomy of a trial which is not justified.

Under Minn.R.Crim.P. 17.06, subd. 2(1), a defendant is allowed to challenge a grand jury indictment if:

\*　　\*　　\*　　\*　　\*　　\*

(d) Fewer than 12 grand jurors concurred in the finding of the indictment;

(e) The indictment was not found or returned as required by law;

\*　　\*　　\*　　\*　　\*　　\*

Under Minn.R.Crim.P. 17.06, subd. 2(2) an objection may lie if:

(a) The indictment \* \* \* does not substantially comply with the requirements prescribed by law to the prejudice of the substantial rights of the defendant.

The primary issue on appeal is whether the trial court clearly erred in dismissing the indictments. We conclude that it did not. We will examine the trial court's findings.

## 1. *Improper Comments on Respondent's Fifth Amendment Rights*

The prosecutor, on at least seven occasions, referred to the fact that respondent refused to testify. The trial court's statements on this point are pertinent:

The prosecutor repeatedly and needlessly stressed to the grand jury the fact that the defendant refused to testify. These comments are improper and have a prejudicial impact upon any defendant, since the obvious cumulative effect is to infringe upon the defendant's Fifth Amendment rights. On at least seven occasions, these statements were made as reflected in the grand jury transcripts at Vol. IV, 149–150 and 154–155 and 160. *The American Bar Ass'n. Standards for Criminal Justice* 3.5(b) state a prosecutor should not make statements in an effort to influence grand jury action which would be impermissible at trial before a petit jury. *See also State v.*

*Streeter,* 377 N.W.2d 498 (Minn.Ct.App. 1985) and *State v. Williams,* 363 N.W.2d 911 (Minn.Ct.App.1985), which both indicate that a prosecutor should never allude to defendant's failure to testify. If the prosecutor were merely to answer a single question of a grand juror and remind them that the defendant's silence cannot be used to indict, there would be no error. However, the repetitive nature of the comments of the prosecutor in this case could serve no purpose other than to inflame the prejudice of the jury against an accused. Repetitious and irrelevant comments which have a prejudicial effect upon the grand jury are improper and are prohibited by the *Code of Professional Responsibility,* DR 7–106(c)(1)(2).

█ It has long been settled that an individual's constitutional privilege against self-incrimination extends to refusal to take the stand before a grand jury. *State v. Gardner,* 88 Minn. 130, 138, 92 N.W. 529, 533 (1902). A petit jury clearly may not be informed of the defendant's invocation of the privilege against self-incrimination. *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).

█ The State argues the prosecutor never urged the grand jury to use respondent's silence to indict or to draw any adverse inferences. While this is true, the comments were frequent and were not an isolated occurrence.

## 2. *Improper Comments on Respondent's Refusal to Waive the Statute of Limitations*

█ On at least six occasions, the prosecutor advised the grand jury of respondent's failure to waive the statute of limitations. The trial court stated that this was "irrelevant, prejudicial, and unnecessary" to advise the jury of this. We agree. The effect of this repetition was prejudicial to respondent. *See* American Bar Association, *Standards for Criminal Justice,* § 3.5(b) (2d ed.1980). The State argues the prosecutor was merely informing the grand jury of respondent's rights under our judi-

cial system. We would find the State's argument more persuasive if this were an isolated incident rather than six references.

### 3. Reference to Possible Punishment

■ The prosecutor advised the grand jury that respondent would not likely receive a prison sentence if later convicted. When asked about this by a grand juror, the prosecutor discussed the fact that there are sentencing guidelines and that the presumptive sentence was a stay and that "it's not presumed that they go to prison or that kind of thing." Again, the trial court's comments are particularly apt:

> Although the prosecutor advised that such information could not be used in their determination as to whether or not to indict, such information makes it easier for the grand jury to issue an indictment if there is legitimate concern about potential punishment. Further, such information is totally irrelevant to the issues of probable cause, and only serves to unduly prejudice the grand jury against the defendant.

### 4. Misstatement of Law of Scienter

Respondent was indicted for aiding perjuring under Minn.Stat. § 609.05, subd. 1 (1984) which provides that "a person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." In response to a grand juror's question, the following exchange occurred:

> GRAND JUROR: Does that say that Mr. Grose also believed it to be true or not true?
> MS. MORRIS: No, he only has to aid her and abet her in making a false statement.

■ In effect, the prosecutor told the grand jury that respondent did not have to know the testimony was false. The grand jury must be given proper legal advice. *United States v. Sousley*, 453 F.Supp. 754, 758 n. 1 (W.D.Mo.1978). The prosecutor's affirmative misstatement that respondent did not have to believe the statements were untrue is clearly prejudicial. The fact that the question was asked shows there was some confusion in the minds of the grand jury on this crucial matter.

### 5. No Evidence Taken on Last Allegation Before Vote to Indict

■ The final allegation in the Michael Patrick indictment involved Michael Patrick's testimony on July 6, 1982 concerning defense drawings. Reference to this testimony, however, was made by the prosecutor who told the grand jury the July 6 transcript was part of the evidence and then stated what she believed the transcript stated. This is improper testimonial communication by the prosecutor. In addition, the July 6 testimony was not part of the evidence.

■ The record indicates no mention was made of the July 6 allegation before the grand jury voted to indict. The prosecutor asked the grand jury if the July 6 testimony was false and they responded "Yes." There is nothing indicating that twelve grand jurors concurred in this; even if this were a "vote" the presence of the prosecutor would be improper under Minn. R.Crim.P. 17.06, subd. 2(1)(f).

### 6. Improper Instructions that Indictment Could be Based on Actions Beyond Statute of Limitations

Minn.Stat. § 628.26(e) (1984) requires that indictments for suborning perjury must be returned within three years after commission of the offense. The trial court concluded that the allegations of suborning perjury were all one behavioral incident, because they allegedly occurred in the same place (Scott County Courthouse), during a continuous time period (one civil trial), with one criminal objective (assisting the witnesses to lie). This determination is not erroneous under the standards for determining whether multiple offenses constitute a single behavioral incident under Minn.Stat. § 609.035 (1984). *State v. Norregaard*, 384 N.W.2d 449 (Minn.1986);

*State v. Johnson,* 273 Minn. 394, 404, 141 N.W.2d 517, 525 (1966).

The trial court therefore stated that if any of the allegations are upheld as within the statute of limitations, all of the allegations, even those involving incidents occurring more than three years before the indictments, may be prosecuted. On the other hand, if no allegation is upheld as within the statute of limitations, then none of the allegations may be prosecuted.

The Colleen Patrick indictment alleged false testimony on May 6, 1982 and included two allegations of false testimony on June 4, 1982. The Michael Patrick indictment alleged false testimony on May 11, 1982 and one allegation of false testimony on July 6, 1982. The Colleen Patrick indictment was returned on June 3, 1985; the Michael Patrick indictment was returned on June 4.

The prosecutor's instructions to the grand jury that they could indict for any false statements made "May 4 through June 4" and throughout the course of trial, was an incorrect statement of law on the statute of limitations. As the trial court stated, "The grand jury should have been informed of the statute of limitations problem. They should have been instructed that if they found probable cause for allegations not excluded by the statute of limitations, then they should determine if probable cause existed for an indictment based on all the allegations. If they did not find probable cause for the allegations not excluded by the statute of limitations, then they need not address the issue of whether probable cause supported other allegations."

We agree with the trial court's assessment that the probable cause instructions were misleading and incomplete, undermining the grand jury's function of acting as an independent body. The grand jury should have been properly instructed as to the statute of limitations defense. As a result of the improper probable cause instructions, the indictments failed substantially to comply with the requirements of law to the prejudice of the substantial rights of appellant.

### 7. *Insufficient Indictments*

The introductory paragraph in the Colleen Patrick indictment recites that regarding the events immediately following the injury during treatment, and regarding training and instruction of the amount of care required for Michael Patrick "some of the statements were untrue." This is insufficient particularity of an indictment and does not charge any offense. A defendant must be adequately informed of the acts or circumstances constituting the offense. Minn.Stat. § 628.18(6), (7) (1984); Minn.Stat. § 628.12. *See Russell v. United States,* 369 U.S. 749, 764–65, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). This defect is also applicable to the introductory paragraph in the Michael Patrick indictment, which recites the same offending language.

### 8. *Inadequate Showing that Twelve Jurors Concurred in the Indictments*

Minn.R.Crim.P. 18.07 and 17.06, subd. 2(1)(d) require that twelve grand jurors must concur in the indictments. Here, there is no showing that this occurred because the grand jury did not deliberate after the indictments were drafted by the prosecutor.

In the Colleen Patrick indictment, after the prosecutor obtained an indictment, the prosecutor then read a proposed indictment, answered questions, made proposed modifications to the indictment, but never submitted a final indictment to the grand jury. Instead, the prosecutor read the proposed indictment to the grand jury, and told them to stop her if they had "any problems" or wanted to "add anything." The record simply does not reflect the twelve grand jurors voted on the final indictment as drafted.

A similar process occurred in the Michael Patrick indictment. A discussion about the proposed indictment occurred, with questions from the grand jurors regarding modifications. Again, no showing was made

that a vote on the final indictment as drafted ever occurred.

We agree with the trial court's conclusion that this was "hardly the calm, deliberate process with final approval of twelve grand jurors which is contemplated" by the criminal procedure rules. As the trial court stated,

> Normally, after all the evidence is heard, a grand jury deliberates and votes to indict. After the vote, if a sufficient number of votes for the indictment exists, the prosecutor drafts the indictment and the proposed indictment is then submitted to the grand jury for its approval. If accepted by them, it becomes the formal indictment.

*See Gaither v. United States,* 413 F.2d 1061, 1070–71, *rehearing* 413 F.2d 1081 (D.C.Cir.1969); *United States v. Brumfield,* 85 F.Supp. 696, 704 (W.D.La.1949).

9. *Overpowering of Grand Jury's Will*

The trial court stated that in addition to the previously discussed areas, the prosecutor overpowered the will of the grand jury in three instances.

The first instance involved the prosecutor determining which allegations were to be stated in the indictment and which were to be deleted, without twelve grand jurors deliberating and approving.

The second instance involved the grand jury considering allegations which were not set forth in the indictments. The record shows the grand jury was concerned about this, but the prosecutor omitted any reference in the indictments.

The third instance involves the prosecutor misstating evidence by telling the grand jury that Michael Patrick "doesn't recall the accident" when this was not totally true as he did recall part of the accident.

Taken cumulatively, we agree with the trial court that these actions may have improperly influenced the grand jury, preventing it from acting as an independent body. *United States v. Hogan,* 712 F.2d 757, 759–61 (2d Cir.1983).

**DECISION**

The record fully supports the trial court's decision to dismiss indictments charging respondent with aiding or abetting perjury. The trial court did not err in its findings or conclusions that based on the totality of circumstances the indictments were not found or returned as required by law and prejudiced the substantial rights of the respondent.

Affirmed.